UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

R. W.,

    **Plaintiff,**

v.                                                     Case No. 8:11-CV-1326-EAK-AEP

MICHELE SPINELLI,
an individual,
and
DAVID GEE,
Sheriff of Hillsborough County,
in his official capacity,

    **Defendants.**
_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 18) and Plaintiff's response thereto (Dkt. 20). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED IN PART** without prejudice as to the claims against David Gee (Counts III and IV), and **DENIED IN PART** in all other respects. The following facts, gleaned from Plaintiff's First Amended Complaint (Dkt. 16), are taken as true for purposes of this motion.

## BACKGROUND

Plaintiff, R.W. (hereinafter "Plaintiff"), was raped by an unidentified assailant on or about January 27, 2007. (Dkt. 16, at ¶ 24). After reporting the crime to the Tampa Police Department (hereinafter "TPD"), Plaintiff was taken to Tampa's Rape Crisis Center, where

1

specimens were collected for evidence and a "rape kit" procedure was performed. (Dkt. 16, at ¶ 25–26). The attending physician prescribed Plaintiff two anti-conception pills. (Dkt. 16, at ¶ 27). At the direction of the attending physician, Plaintiff took the first anti-conception pill while at the Rape Crisis Center and retained the other pill with instructions to ingest it twelve (12) hours later. (Dkt. 16, at ¶ 30).

Thereafter, a TPD officer accompanied Plaintiff back to the scene of the crime to investigate. (Dkt. 16, at ¶ 31). At some point, however, the officer discovered that Plaintiff was the subject of an arrest warrant for failure to appear and failure to pay restitution. After making this discovery, the officer arrested Plaintiff and took her to the Hillsborough County Jail on Orient Road in Tampa, Florida (hereinafter "Jail"). The remaining anti-conception pill was taken from Plaintiff upon her arrival at the Jail. Michele Spinelli (hereinafter "Spinelli") worked at the jail for a private contractor, and "was charged with decisions involving the care of the Plaintiff, including whether or not to dispense the previously prescribed medication to the Plaintiff." (Dkt. 16, at ¶ 36–37). Spinelli's exact position and duties at the Jail are not clear from the complaint.

Plaintiff remained in jail overnight, and the next morning requested the anti-conception pill from Spinelli explained that the doctor at the Rape Crisis Center had prescribed it to ensure that Plaintiff did not become pregnant as the result of the rape. (Dkt. 16, at ¶ 38). In response, "Spinelli told the Plaintiff that Spinelli would not give her the pill because it was against her (Spinelli's) religious beliefs." (Dkt. 16, at ¶ 39). Thus, Plaintiff was allegedly denied the second anti-conception pill on January 28, 2007. Plaintiff was, however, permitted to take the pill the day after, "just prior to her release" on January 29, 2007, though who exactly allowed her to take

the pill is not stated in the complaint. (Dkt. 16, at ¶ 41–42). Plaintiff did not become pregnant as the result of the rape.

In Count I of the Second Amended Complaint, Plaintiff sets forth a claim against Spinelli under 42 U.S.C. § 1983 for violation of her right to privacy. Plaintiff alleges that, by "wrongfully refusing to let the Plaintiff take the previously prescribed pill, Spinelli[] committed an 'unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.'" (Dkt. 16, at ¶ 46) (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972)). Count II sets forth a claim against Spinelli under § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment, arguing that "Spinelli's reason for refusing to let the Plaintiff take the previously prescribed pill constituted intentional gender-based discrimination," (Dkt. 16 at ¶ 56), because "Spinelli would have, as she had in the past, allowed a male seeking a gender change to take the same medication," (Dkt. 16, at ¶ 58). Count III sets forth a right to privacy claim against David Gee (hereinafter "Gee") under § 1983, claiming that Spinelli made the unconstitutional decision to refuse Plaintiff the second anti-conception pill "as the person designated by Gee, in his official capacity as Sheriff of Hillsborough County, with 'final policymaking authority' over whether to provide previously prescribed contraceptive medicine to inmates at the Orient Road jail when such action was contrary to Spinelli's own religious beliefs." (Dkt. 16, at ¶ 67). Finally, Count IV sets forth a nearly identical claim against Gee under the Equal Protection Clause for violation of "Plaintiff's federally protected rights prohibiting gender[-]based discrimination." (Dkt. 16, at ¶ 74). As for damages, Plaintiff curiously states the same boilerplate (and quite extensive) damages for each of her claims, arguing that as the result of her ordeal, she suffered "bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of

3

life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition." (Dkt. 16, at ¶ 52). Plaintiff accordingly "demands judgement [sic] for nominal, compensatory, and punitive damages."

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8(a)(2) requires that a plaintiff's complaint lay out "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). That said, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007) (internal quotation marks and citation omitted).

Therefore, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss, courts must follow a simple, two-pronged approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). In sum, the "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

4

## DISCUSSION

Defendants wage a three-pronged attack on the sufficiency of Plaintiff's complaint. First, Defendants claim that Plaintiff has failed to state a claim upon which relief can be granted with respect to Counts I and III for abridgement of the right to privacy. Next, Defendants argue the same with regard to Counts II and IV, which plead violations of Plaintiff's Equal Protection rights. Finally, Defendants contend that Plaintiff has failed to demonstrate a municipal policy sufficient to support § 1983 liability with regard to the claims against Gee (Counts III and IV). As will be shown, the former two arguments must fail, but the third point is well-taken; the Court will accordingly grant Defendants' motion and dismiss Counts III and IV without prejudice.

### A. Right to Privacy

"Although '(t)he Constitution does not explicitly mention any right of privacy,' the Court has recognized that one aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'" *Carey v. Population Servs., Intern.*, 431 U.S. 678, 684 (1977) (quoting *Roe v. Wade*, 410 U.S. 113, 152 (1973)). This guarantee of privacy includes "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977). An individual's decision to use or not to use contraception is undoubtedly among those fundamental decisions protection by the right of privacy: indeed, "[i]f the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972). Indeed, because "decisions whether to accomplish or to prevent conception are among the most private and

sensitive," they accordingly "hold[] a particularly important place in the history of the right of privacy." *Carey*, 431 U.S. at 685.

Defendants' Motion to Dismiss Counts I and III is premised on the fact that "Plaintiff fails to allege facts demonstrating an 'undue burden' on her ability to terminate her pregnancy." (Dkt. 18, at 5) (quoting *Planned Parenthood v. Casey*, 505 U.S. 833, 874 (1992)). But Defendants misconstrue the right of privacy as it relates to decisions regarding contraception: to be sure, though restrictions on the right to an abortion are unconstitutional only if they pose an "undue burden" on a woman's right to terminate her pregnancy, the "undue burden" analysis is inapposite to the question of contraception where a woman seeks to *prevent*—not to terminate— her pregnancy. Hence, Defendants' argument that Spinelli's actions did not place an undue burden on Plaintiff's right to terminate her pregnancy completely miss the mark, and their Motion to Dismiss Counts I and III of the Second Amended Complaint must fail.

### B. Equal Protection

Defendants' arguments with regard to the Equal Protection claims (Counts II and IV) are also easily disposed of. First, Defendants argue that Plaintiff fails to state a claim upon which relief can be granted because she fails to allege any discriminatory or invidious purpose. (Dkt. 18, at 7–8). But as Defendants themselves have pointed out, a discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" such as women. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). The Second Amended Complaint clearly contends that Spinelli would have given the same contraceptive to a male inmate, had in fact given the same contraceptive to male inmates seeking a gender change in the past, and did not give the second contraceptive pill to Plaintiff "because the Plaintiff was a

female." (Dkt. 16, at ¶¶ 56–59). Taking these factual allegations to be true, as the Court must at this juncture, there is no doubt that Plaintiff states a claim under the Equal Protection Clause of the Fourteenth Amendment. *See Am. Dental Ass'n*, 605 F.3d at 1290 (requiring that courts assume the veracity of well-pleaded factual allegations on a Rule 12(b)(6) motion to dismiss).

That said, and though it must accept Plaintiff's factual allegations as true, the Court admonishes Plaintiff's counsel against making specious claims merely to survive dismissal, lest Plaintiff's counsel find himself defending a future motion for sanctions. *See* Fed. R. Civ. P. 11 (providing for sanctions against attorneys whose pleadings do not, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," contain "factual contentions hav[ing] evidentiary support"). Indeed, it seems remarkable that Plaintiff would have knowledge of Spinelli's having providing contraceptives to male inmates seeking gender changes, especially in light of the various health privacy laws and that protect inmates' health records. *Cf. Graham v. Witalec*, Case No. 5:10-CV-65-RS-GRJ, 2011 WL 1335808, at ** 1–2 (N.D. Fla. Apr. 7, 2011) (noting that HIPAA protects prisoners' medical records). At any rate, because the Court takes Plaintiff's factual claims to be true and those allegations are sufficient to defeat the instant 12(b)(6) attack, the Motion to Dismiss for failure to state an Equal Protection claim upon which relief can be granted is denied.

Defendants' contention that Plaintiff's claims must also be dismissed because they contain contradictory bases for relief is similarly unavailing. First, there is nothing to say that Spinelli could not have been motivated by *both* her religious beliefs *and* an animus towards Plaintiff's status as a woman. In any event, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Insofar as Defendants argue to the contrary, they are wrong.

7

## C. Claims Against Defendant Gee

Counts III and IV of the Second Amended Complaint are styled as against David Gee in his official capacity as Sheriff of Hillsborough County. (Dkt. 16, at ¶ 23). "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). Moreover, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* at 166. In sum, Plaintiff's claims against Gee are in actuality claims against the municipality of Hillsborough County itself.

But to prevail on her claim against Gee under § 1983, Plaintiff must prove that actions taken under color of state law deprived her of a federal right, and that an *official* policy—"a municipal policy of some nature"—caused the constitutional tort. *Monell*, 436 U.S. at 691. "In other words, a municipality may not be found liable simply because one of its employees committed a tort." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Put yet another way:

> Section 1983 liability may not be premised solely upon a respondeat superior theory—i.e., a county may not be held liable solely by virtue of the employment relationship linking it to the offending employee. Rather, only deprivations undertaken pursuant to governmental "custom" or "policy" may lead to the imposition of governmental liability.

*Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989). In certain situations, however, municipal liability can be imposed for the single decision of a municipal official, so long as that official is endowed with final policymaking authority. *Id.* at 792 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Though this is a question of state law, "the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local

8

governmental unit." *Id.* at 793–94 (finding that a physician's assistant at a road prison who was solely responsible for medical care at the prison and whose decisions were subject to "no supervision or review" "was the sole and final policymaker with respect to medical affairs at the road prison").

Given those elementary principles, the Court need not belabor the point, because it is plain that Plaintiff's Second Amended Complaint contains none of the predicate facts necessary to support the claims against Defendant Gee under § 1983. Plaintiff contends that Spinelli made the "decision [to deny the contraception] as the person designated by Gee, in his official capacity as Sheriff of Hillsborough County, with 'final policymaking authority' over whether to provide preciously prescribed contraceptive medication to inmates at the Orient Road jail." (Dkt. 16, at ¶¶ 67, 73). This Court must, however, disregard such unadorned legal conclusions, leaving Plaintiff with nothing at all upon which to base § 1983 liability against Gee. *See Am. Dental Ass'n*, 605 F.3d at 1290 (explaining that the first step in any court's Rule 12(b)(6) inquiry is to "eliminate any allegations in the complaint that are merely legal conclusions"). Plaintiff's Complaint, for example, never explains Spinelli's position at the Jail, whether she was subject to supervision, or how, as a matter of *fact*, she is alleged to have in any way been "the sole and final policymaker with respect to medical affairs" at the Jail. *Mandel*, 888 F.2d at 794. In fact, the allegation that Plaintiff actually received the second anti-conception pill while still in jail casts doubt on Spinelli's alleged role as a final policymaker. (Dkt. 16, at ¶ 42). This Court has no choice but to grant Defendants' Motion to Dismiss in part and dismiss Counts III and IV against Defendant Gee.

Finally, the Court notes incidentally that, even though each count of Plaintiff's complaint contains the same, copied-and-pasted prayer for relief alleging Plaintiff suffered "bodily injury

governmental unit." *Id.* at 793–94 (finding that a physician's assistant at a road prison who was solely responsible for medical care at the prison and whose decisions were subject to "no supervision or review" "was the sole and final policymaker with respect to medical affairs at the road prison").

Given those elementary principles, the Court need not belabor the point, because it is plain that Plaintiff's Second Amended Complaint contains none of the predicate facts necessary to support the claims against Defendant Gee under § 1983. Plaintiff contends that Spinelli made the "decision [to deny the contraception] as the person designated by Gee, in his official capacity as Sheriff of Hillsborough County, with 'final policymaking authority' over whether to provide preciously prescribed contraceptive medication to inmates at the Orient Road jail." (Dkt. 16, at ¶¶ 67, 73). This Court must, however, disregard such unadorned legal conclusions, leaving Plaintiff with nothing at all upon which to base § 1983 liability against Gee. *See Am. Dental Ass'n*, 605 F.3d at 1290 (explaining that the first step in any court's Rule 12(b)(6) inquiry is to "eliminate any allegations in the complaint that are merely legal conclusions"). Plaintiff's Complaint, for example, never explains Spinelli's position at the Jail, whether she was subject to supervision, or how, as a matter of *fact*, she is alleged to have in any way been "the sole and final policymaker with respect to medical affairs" at the Jail. *Mandel*, 888 F.2d at 794. In fact, the allegation that Plaintiff actually received the second anti-conception pill while still in jail casts doubt on Spinelli's alleged role as a final policymaker. (Dkt. 16, at ¶ 42). This Court has no choice but to grant Defendants' Motion to Dismiss in part and dismiss Counts III and IV against Defendant Gee.

Finally, the Court notes incidentally that, even though each count of Plaintiff's complaint contains the same, copied-and-pasted prayer for relief alleging Plaintiff suffered "bodily injury

and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition," (Dkt. 16, at ¶ 52), there are no facts of any sort set forth in the Complaint that would support *any actual damages* at all. *See Carey v. Piphus*, 435 U.S. 247, 267 (1978). Thus, and though the Court assumes Plaintiff's counsel is already cognizant of this fact, the Court wishes for the Plaintiff to be personally aware that, should she ultimately prevail on her claims, her damages will in all likelihood be limited to "nominal damages not to exceed one dollar," in addition to costs and fees pursuant to 42 U.S.C. § 1988. *Id.* Having said that, it is nonetheless

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 18) be **GRANTED IN PART** without prejudice as to Counts III and IV, and **DENIED IN PART** in all other respects. Plaintiff has ten (10) days to file a third amended complaint. Failure to timely file a third amended complaint will result in the dismissal of Counts III and IV with prejudice.

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 6th of March, 2012.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.