UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

R.W.,

Plaintiff,

v.                                                                Case No. 8:11-CV-1326-EAK-AEP

MICHELE SPINELLI,
an individual,
and
DAVID GEE,
Sheriff of Hillsborough County,
in his official capacity,

Defendants.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This Cause is before the Court on Defendant Sherriff David Gee's Motion to Dismiss Counts III and IV of Plaintiff's Third Amended Complaint (Dkt. 24) and Plaintiff's response thereto (Dkt. 26). The following, gleaned from the Plaintiff's complaints, are taken as true for the purpose of this motion.

### BACKGROUND

Plaintiff, R.W. (hereinafter "Plaintiff"), was raped by an unidentified assailant on or about January 27, 2007. (Dkt. 16, at ¶24). After reporting the crime to the Tampa Police Department (hereinafter "TPD"), Plaintiff was taken to Tampa's Rape Crisis Center, where specimens were collected for evidence and a "rape kit" procedure was performed. (Dkt. 16, at ¶25-26). The attending physician prescribed Plaintiff two anti-conception pills. (Dkt. 16, at ¶27). At the direction of the attending physician, Plaintiff took the first anti-conception pill

while at the Rape Crisis Center and retained the other pill with instructions to ingest it twelve (12) hours later. (Dkt. 16, at ¶30).

Thereafter, a TPD officer accompanied Plaintiff back to the scene of the crime to investigate. (Dkt. 16, at ¶31). At some point, however, the officer discovered that Plaintiff was the subject of an arrest warrant for failure to appear and failure to pay restitution. After making this discovery, the officer arrested Plaintiff and took her to the Hillsborough County Jail on Orient Road in Tampa, Florida (hereinafter "Jail"). The remaining anti-conception pill was taken from Plaintiff upon her arrival at the Jail. Michele Spinelli (hereinafter "Spinelli") worked at the jail for a private contractor, and "was charged with decisions involving the care of the Plaintiff, including whether or not to dispense the previously prescribed medication to the Plaintiff." (Dkt. 16, at ¶36-37). Spinelli was allowed to hold her position by Sherriff David Gee. (Dkt. 23, at ¶68). She received no "guidance, supervision, or direction" from Gee on whether, given her religious beliefs, she could withhold anti-conception medication, and Gee had no official policy on the matter. (Dkt.23, at ¶68).

Plaintiff remained in jail overnight, and the next morning requested the anti-conception pill from Spinelli. Plaintiff explained that the doctor at the Rape Crisis Center had prescribed it to ensure that Plaintiff did not become pregnant as the result of the rape. (Dkt. 16, at ¶38). In response, "Spinelli told the Plaintiff that Spinelli would not give her the pill because it was against her (Spinelli's) religious beliefs." (Dkt. 16, at ¶39). Thus, Plaintiff was allegedly denied the second anti-conception pill on January 28, 2007. Plaintiff was, however, permitted to take the pill the day after, "just prior to her release" on January 29, 2007, though who exactly allowed her to take the pill is not stated in the complaint. (Dkt. 23, at ¶42). Plaintiff did not become pregnant as a result of the rape.

In Count I of the Third Amended Complaint, Plaintiff sets forth a claim against Spinelli under 42 U.S.C. § 1983 for violation of her right to privacy. Plaintiff alleges that, by "wrongfully refusing to let the Plaintiff take the previously prescribed pill, Spinelli [] committed an 'unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.'" (Dkt. 23, at ¶46) (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972)). Count II sets forth a claim against Spinelli under § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment, arguing that "Spinelli's reason for refusing to let the Plaintiff take the previously prescribed pill constituted intentional gender based discrimination," (Dkt. 23 at ¶56), because "Spinelli would have, as she had in the past, allowed a male seeking a gender change to take the same medication." (Dkt. 23, at ¶58). Count III sets forth a right to privacy claim against David Gee (hereinafter "Gee") under § 1983, claiming that Spinelli made the unconstitutional decision to refuse Plaintiff the second anti-conception pill "as the person designated by Gee, in his official capacity as Sheriff of Hillsborough County, with 'final policymaking authority' over whether to provide previously prescribed contraceptive medicine to inmates at the Orient Road jail when such action was contrary to Spinelli's own religious beliefs." (Dkt. 23, at ¶67). Finally, Count IV sets forth a nearly identical claim against Gee under the Equal Protection Clause for violation of "Plaintiffs federally protected rights prohibiting gender[-]based discrimination." (Dkt. 23, at ¶76). As for damages, Plaintiff curiously states the same boilerplate (and quite extensive) damages for each of her claims, arguing that as the result of her ordeal, she "suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. Furthermore, Gee's

policy caused the Plaintiff to suffer emotional distress and the emotional distress was severe because the Plaintiff reasonably believed Gee's policy was causing her to continue with a pregnancy which would have been the product of a rape and caused her to suffer actual damages consisting of, but not limited to, the cost of diagnostic testing, medical examinations, medical treatments and psychological therapy, and general damages as well as. [sic]" (Dkt. 23, at ¶82). Plaintiff accordingly "demands judgement [sic] for nominal, compensatory, and punitive damages." (Dkt. 23, at ¶83).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8(a)(2) requires that a plaintiff's complaint lay out "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). That said, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S 544, 555 (2007) (internal quotation marks and citation omitted).

Therefore, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly,* 550 U.S. at 570). In considering a motion to dismiss, courts must follow a simple, two-pronged approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal,* 129 S. Ct.

1937,1950 (2009)). In sum, the "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but demands more than an unadorned, the defendant-unlawfully harmed-me accusation." *Iqbal,* 129S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555).

## DISCUSSION

Defendant moves to dismiss Counts III and IV against Gee on the grounds that Plaintiff's claims are implausible and merely incant the legal conclusion that Spinelli is a final policy-maker. (Dkt 24, 4-6). Counts III and IV were dismissed from Plaintiff's Second Amended Complaint for similar reasons. However, in this amended complaint, Plaintiff has plead additional facts sufficient to render her claims plausible.

Counts III and IV of the Second Amended Complaint are styled as against David Gee in his official capacity as Sheriff of Hillsborough County. (Dkt. 16, at ¶23). "Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham,* 473 U.S. 159,165 (1985) (quoting *Monell v. N.Y.C. Dep't of Social Servs.,* 436 U.S. 658, 690 n.55 (1978)). Moreover, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* at 166. In sum, Plaintiff's claims against Gee are in actuality claims against the municipality of Hillsborough County itself.

Under § 1983, citizens may sue any person acting under state "statute, ordinance, regulation, custom, or usage" who has violated their constitutional or legal rights. 42 U.S.C. § 1983. Municipalities count as persons for the purpose of § 1983 claims. *Monell* 436 U.S. at 690. Section 1983 violations must occur as a result of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* Thus, the government cannot be held liable under a theory of

*respondeat superior*. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988). Nor can it be held liable merely because a particular official acts with discretion. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822–24 (1985).

However, the single action of a final policy-maker can represent official government policy, even when the action is not meant to control later decisions. *Pembaur v. City of Cincinnati* 475 U.S. 469, 481 (1986). Using "state and local positive law, as well as custom or usage having the force of law," the trial judge determines, prior to trial, the authorized final policy-maker. *Jett v. Dallas Independent School Dist.* 491 U.S. 707, 737 (1989) (quoting *Praprotnik*, 485 U.S. at 121 n. 1) (internal quotation marks omitted). Final policy-makers are not subject to review or constraint from superior officials. *Praprotnik*, 485 U.S. at 127; *Mandel v. Doe*, 888 F.2d 783, 793-94 (11th Cir. 1989) (finding that a physician's assistant at a road prison who was solely responsible for medical care at the prison and whose decisions were subject to "no supervision or review" "was the sole and final policymaker with respect to medical affairs at the road prison."). While determining whether someone is a final policy-maker may be difficult, since there are a "rich variety of ways in which the power of government is distributed among a host of different officials and official bodies", there is always "some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Praprotnik*, 485 U.S. at 124-25.

The term 'policy' has a fairly broad definition for the purpose of § 1983. As commonly used, the term may bring to mind a set of official rules and regulations passed down from "on high". However, 'policy' simply involves "a course of action consciously chosen from among various alternatives," and does not necessarily require an official declaration or authority over

other individuals. *City of Oklahoma City v. Tuttle*, 471 U.S. at 823; *see also Pembaur*, 475 U.S at 481 n. 9.

In the third amended complaint, Plaintiff alleged the following additional facts to support her claim that Spinelli was a final policy-maker: (1) Gee allowed Spinelli to work at the jail as the only person on duty with the power to dispense anti-conceptive medication, (2) Gee did not provide Spinelli with any guidance, supervision, or direction on whether she could refuse to dispense anti-conceptive medication based on her religious beliefs, and (3) Gee did not promulgate any policy on refusals to dispense anti-conceptive medication based on religious beliefs. (Dkt. 23, at ¶68). None of these facts are mere labels or legal conclusions.

Taken as true, these three facts provide plausible grounds for relief. The holding of *Mandel*, the broad definition of policy, and the fact that all governmental actions are the result of some official policy, grant plausibility to the Plaintiff's claim. Even though Spinelli was apparently some type of medical employee and seems to have no statutorily-granted, traditional policy-making role, *Mandel* suggests that she may still be a final policy-maker. Even though her act did not govern subsequent decisions of jail employees, it plausibly falls under the definition of 'policy'. Gee, as the representative of the municipality, promulgated no policy on anti-conceptive medication and provided no guidance or supervision to Spinelli on the matter. Given that some entity must set policy for the government in each situation, Plaintiff has rendered plausible the claim that Spinelli was designated the final policy-maker with respect to her decision to withhold anti-conceptive medication for religious reasons.

That is not to say, of course, that the Plaintiff will ultimately prevail on her claims. To the contrary, Plaintiff faces several key evidentiary hurdles before liability will be proved. *See, e.g.,*

*Fla. Family Ass'n, Inc. v. Sch. Bd. of Hillsborough Cnty.*, 494 F. Supp. 2d. 1311, 1323 (M.D. Fla. 2007) ("[S]imple or even heightened negligence is not sufficient to establish liability under [§ 1983]."). But at this early juncture, the Court must take the well-pleaded allegations of the complaint as true. It has done just that here – nothing more. Accordingly, it is

**ORDERED** that Defendant's motion to dismiss is **DENIED**, and the Defendant has ten (10) days to answer the complaint.

**DONE AND ORDERED** in Chambers, in Tampa, Fl., this 13th of June, 2012

Elizabeth A. Kovachevich
United States District Judge

Copies to: All parties and counsel of record.